on behalf of Mr. Garcia. I would ask that to reserve about three minutes for rebuttal. For the benefit of all counsel today, you will have to monitor your own time. We'll try and help you. Judge, Mr. Garcia went to trial in the district court, hopefully with the understanding that that was going to be the last time he was going to be subject to government prosecution. And that there would be a determination made at the end of that trial, either guilt or innocence. Unfortunately for Mr. Garcia, after the jury had deliberated a short period of time and over objections at that time of both counsel for Mr. Garcia and the government, the court granted a mistrial. It is our contention that the mistrial was granted without manifest necessity, that the factors that this court has used in determining whether a mistrial should be granted and whether the mistrial was an exercise or an abuse of discretion all point against the exercise by the court in this case and all demonstrate that because the mistrial was granted without manifest necessity, the continued prosecution in this case would violate Mr. Garcia's rights under the Double Jeopardy Clause of the United States Constitution. Well, if it was a no-fault mistrial, it wasn't anybody's, either side's, connivance or... No, I understand that. That's absolutely true. Well, then why isn't it a manifest necessity? Well, Judge, the trial in this case was about three and a half days long. Now, the United States Attorney's Office points out that there was not voluminous testimony in the particular case, but it was a trial in which the jury was present and deliberating and listening to testimony for some period of time. The total amount of time that the jury deliberated was about five hours or so of deliberation on this particular case. At the time that the jury went out, about 4 o'clock, deliberated for about 20 to 30 minutes on a Thursday afternoon, came back at 9 o'clock the next day. During that period of time, the jury spent about one hour re-listening to a deposition of one of the main government witnesses, and also at that time, in the afternoon hours, requested an instruction on reckless disregard. So for all intents and purposes, it appeared that the jury was progressing, was asking questions, and in fact doing the things that a jury should do. It was at about 3.45 in the afternoon that Judge Collins called all counsel into indicating that, although there was no note from the jury, that he was going to be, that the jury had some problems concerning whether they could reach a verdict in this case. At that time, both myself and Ms. Feldman, the United States Attorney, objected to any mistrial being even considered at that time. At that time, in fact, the judge even indicated that he was not considering it, but wished to give a modified outline instruction, which he subsequently did at 3.45. It was about 10 minutes later that, again, the court convened, indicating that there was, the jury was still indicating they could not deliberate. At that juncture, unfortunately, based upon the circumstances of the case, there is a divergence of what really happened. The record does not indicate what I indicated or asked the court to make a determination on in May in a motion to correct the record. But it is, since there was no collective opinion on that particular issue, the only thing we have in the record is, in fact, that within 10 minutes of that 4 o'clock meeting with the court, that there was a note from the foreman of the court, the foreman of the jury, indicating basically that some jurors are only willing to listen but not deliberate, whatever that particular word would mean. At that time, the judge then brought the jury in, questioned them individually, and then declared a mistrial. But he questioned them individually as to whether they thought they were going to be able to reach a verdict. And they were unanimous on that point. As the judge pointed out, it was the first thing they had agreed on. That's correct. That's what the jury said. And the district judge should not have taken them at their word? Well, Judge, I think this, at least the way I read the case law in this jurisdiction and others, that certainly the jury's, juror's opinion as to whether they can reach a verdict is one of the important factors. But there are several others that the court has to make a, take into consideration. He had already given them an Allen instruction. Well, but we gave him an Allen instruction at 345, and we have about 15 or 20 minutes later he's declaring a mistrial. It's not exactly like the jury was given an extreme amount of time to make that determination that they could or could not reach a verdict. If you look to the standards, the five standards that were set out in the United States v. Gordado, in which Gordado indicates that it is the juror's, the juror's opinion standing alone are not sufficient for the exercise of a mistrial to be granted or a manifest necessity to be determined, that the other factors, there are five factors set forth in that particular case. That should be considered, none of which really appeared in this particular situation. The jurors apparently didn't have any trouble reading the instructions or confusion with respect to the instructions. That's not the cause, right? Judge, you know, what's interesting about this case is not that the issues were totally complex. I think one of the problems with the jurors in making their determination is that the evidence presented by the government was fairly meager. We had a case in which the immigrant coming in from Mexico indicated that he had been told by someone to walk across the border, that his mother got sick, and then they waved down my client as he was going down the highway because his mother was sick. There was no indication of any statements being made by my client during that, during the trip, and they were later then. How many people did he have in the RV? Well, there was 18 individuals, of which only two were dead.  How many? Well, there were two people. There was only two people that were determined, well, that were determined to actually be illegal aliens, Judge. There was no evidence presented that any of the other individuals were, in fact, illegal. But if the instructions were perfectly clear and you didn't, and you had a relatively short trial, how many days do you think you have to keep the jury deliberating before you're satisfied? Well, Judge, I think that you have to have a sufficient time to make sure that they have covered all of the bases and made a determination whether there's sufficient evidence to convict or that they just can't make that decision. There is no ‑‑ I don't know that there's a right look to counsel. The district court certainly consulted with counsel, and the district court had heard all the evidence. He had heard the jury videre and knew the character of the jurors, and he interviewed them. What else is a trial court going to do, just go on for a week or what? Well, you know, Judge, in reading the cases in this particular area, it appears that when a mistrial is not granted, the court rarely finds that it was abuse of discretion, even though the jurors were crying out that they couldn't reach a verdict. When a mistrial is granted, however, then it seems like there's almost a second standard that the court uses, saying, well, that was a discretion by the judge because he believed that these people could, in fact, make that decision. There is a unique quote from United States v. Knight, although it's an Eighth Circuit, it's not a Ninth Circuit case, but in that the court says, jury duty can be unpleasant, but difficult one‑sided debate in the jury room does not require mistrial. I think also, Judge, that if you look to the requisites that were set out in the Ninth Circuit in the United States v. Bates, four requisites that a judge should consider prior to making a decision to declare a mistrial, that none of those really were apparent or even present in that particular case. Kennedy, I remember when I was a district judge a long time ago, we didn't have very many mistrials, but once in a while you'd get some type of juror misconduct which doesn't ‑‑ it's unaccountable, it can't do anything about it. You get a juror who tells the other jurors, I'm not going to move, I made up my mind. And when that happens, sometimes all a judge can do is start over, go back to square one and do it again. Well, Your Honor, I think that's exactly what happened in like in this Court's case in the United States v. Salvador, when after about 13 hours of deliberation after a three‑day trial, one juror said he had a religious inspiration that precluded him from going guilty. On the other hand, if we look to the Ninth Circuit's case of Rogers v. United States in which there was a three‑day trial and four days of deliberation, the Court agreed that mistrial was appropriate only because the two other of the factors from Guardado was present, one, jury exhaustion, and two, there was no objection from the defense counsel. So there is ‑‑ I don't know that there is a bright line test. I know that certainly when we look to the cases of the Ninth Circuit and the circumstances that the Court should take into consideration, it's my belief that the record just does not justify Judge Collins' decision. Okay. We'll hear from the government. Good morning. May it please the Court. I'm Chris Cavanias from the District of Arizona. Judge Goodwin, I think it was a decision that you joined in in Salvador where it was about whether to grant a mistrial. And that's understandable. The district court is there, as it was noted, watching the trial, hearing the testimony. The judge is making observations about, in this case specifically, about how long the jury had been out in comparison with how much testimony had been taken. And these are all things that the district court took into consideration. And we had a case here which is actually even more indicative, I would say, of justifying why the district court granted a mistrial based on the hung jury if you compare this case to Hernandez-Gordado. In Hernandez-Gordado, well, let me talk about this case. We had first what I would call the first deadlock, where then the court gave an Allen charge. And the court gives an Allen charge. I mean, that's pretty much like the last thing a district court can really do, to try to tell a jury to do its best to reach a verdict. And then the jury says they're deadlocked again. That's the second deadlock. And that's the one where you'll see in the record the court was inclined at that time to grant a mistrial, but both parties objected. So the court said, Moe, Moe is his assistant. Moe, tell him to keep trying, keep deliberating. And we have those citations to the record in our brief. Then a note comes from the jury, and that is what I would call the third deadlock. And the jury writes quite eloquently, we've done our best here to reach a verdict. They use language like, despite discussion and thorough examination of the evidence, our count for guilty and not guilty remains the same as when we began deliberating this morning, and further discussions will not render a unanimous verdict because some jurors are now only willing to listen and not participate. And I think, again, it was observed that sometimes it's just the way it is. You know, juries just can't reach a particular decision. And I think, really, if you break down the defendant's argument, he's saying the district court abuses discretion by not sending the jury back for yet a fourth time. I mean, I think we've reached the point of critical mass here, and the district court understood it. And in Hernandez-Guardado, in that case, the jury was only out for 90 minutes. Here they were out for many hours, if you count the time, the half an hour before when they started the day before, and then from 9 to noon, and they took only a 35-minute lunch, and then they're getting their Allen charge at about 345. I mean, that's three hours after that. And, you know, again, it's a long period of time to be out. And there was only one deadlock, and the mistrial was granted in Hernandez-Guardado, and this Court found that it was entirely appropriate. And the jury was polled in this case, just like in Hernandez-Guardado, the district court asking each juror, do you think further deliberations would produce a verdict, and each of them saying no. So the bottom line is the district court did what a reasonable district court judge would do. It really is, I would probably say, irrelevant whether or not this Court applies a plain error standard or an abuse of discretion standard, because the defendant prevails, I mean, excuse me, the government prevails in any event, because the district court just did not abuse its discretion. I wanted to add just one more thing about the record, because some of the things that occurred with regard to the motion to correct the record that the defendant filed was done after the defense got our answering brief. After we filed our answering brief arguing that there was a plain error standard because the defendant did not object to the mistrial. Then defense counsel went back to the district court and asked the court reporter to check her notes to see whether or not there was, in fact, an objection rendered. And the court reporter did not change her transcript other than language that had to do with the second deadlock, not the third. And the district court judge, despite the quotes that defense counsel has in his reply brief, he omits what I would call the most significant. On page 25 of the transcript from May 8, 2008, and again, all this is happening since the time we filed our brief. That's why I want to address it. On page 25, the court declines to correct the record. You know, the defendant went down, defense counsel went down and said, hey, judge, I think that I did object. And the court talked about how he may have recalled an objection, too, but he did not change the record. It's on page 25. And he allowed Mr. Bartolino to file an affidavit, and the court may see that in its supplemental excerpts of record that he filed with his reply brief. But the court says, I'm not going to do anything else with the record other than what it says. And again, this is on page 25. And on line 10, the court says, I'm not making any change to the record that already exists. So in that regard, it's being denied. So I just wanted to just raise that just to let the court know that the district court did, in fact, decline to change the record. And the record, as it appears in the transcript that's in the back of the government's transcript, that really would apply here, apart from that one little change that the court reporter had, which has no bearing on whether or not the defendant objected. So whether this Court applies plain error or not, even if it just applies ordinary abuse of discretion, there was no abuse of discretion here. Thank you, Ms. Cavaney. The Court has any more questions for me? I don't think so. Thank you. Counsel, you've consumed your time. If there's something that you need, that the Court needs to hear, we'll afford to just a minute. I just want to reply briefly to the issue concerning objection and non-objection. First, the up until the brief in this case was filed, there had been no argument by the U.S. government that there was any failure to object to the mistrial. In fact, the government, at the time of the hearing on the motion to dismiss, agreed that both parties had objected. That was one of the reasons that I didn't believe it was necessary to supplement the record. Up until the time I all of a sudden opened the government's brief. So that particular issue, one, was waived by the government, but by not raising it at that time. I've also indicated why further objection would not have been necessary pursuant to Rule 51. And second of all, that if in fact, if in fact that, at the time that the judge granted the mistrial, it was a sua sponte grant, and if the government is saying that it was my responsibility to object at that time, then the judge abused its discretion by violating Rule 26.3, which says that prior to the grant of a mistrial, it must consult with the parties, shall make a determination concerning the opinions of the parties, shall make a determination concerning the, what to do that would least affect the defendant's rights, and make a decision that would least affect or in any way prejudice the defendant in his right to have a trial and a decision at that time. So that is one of the reasons that the new motion was made and a motion to amend the record. The court can see in my affidavit, which is my memory of what occurred at that time, unfortunately it did not get on the record, but it is my memory being there at the time that the reason the note came up from the jury was that it was directed by the judge after the judge had already made a determination he was going to grant a mistrial. Thank you. Thank you counsel. Proceed as submitted. Next case on the calendar is Anlin Industries v. Burgess.
judges: Goodwin, Beezer, Bybee